# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 31, 2013

No. 11-60754

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

WAYNE ALLEN STOKER,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi

Before JONES, GARZA, and PRADO, Circuit Judges.

PER CURIAM:

Wayne Allen Stoker ("Stoker") appeals his conviction and sentence on two counts of retaliating against and threatening a witness, in violation of 18 U.S.C. §§ 1513(e) and 876(c). Finding the evidence sufficient to support the verdict, but only one count to be a crime of violence under current law, we affirm the conviction and vacate and remand for resentencing.

## BACKGROUND

On February 20, 2009, Stoker caused a disturbance in, and was removed from, the Dam Bar in Grenada County, Mississippi. He returned after closing that night and burned it down. Following the incident, he became acquainted with a woman named Donna Moore ("Moore") and sometime thereafter confessed

No. 11-60754

the arson to her.  Upon hearing the details of Stoker's act, Moore became fearful and called an anonymous hotline to report the incident.  An FBI agent eventually convinced her to testify, and the Report of Investigation ("ROI") outlining her story aided in precipitating a guilty plea from Stoker.  The ROI detailed Stoker's actions and also reported the extreme fear Moore felt in coming forward with the information.  One day after he was sentenced to nine years in prison for the arson, Stoker mailed Moore a copy of the ROI from prison.  Moore took this to be a threat and suffered serious emotional distress as a result.

Stoker was subsequently convicted by a jury of violating 18 U.S.C. § 1513(e)—retaliation against a witness providing truthful information to a law enforcement officer—and § 876(c)—mailing a threatening communication.  The presentence investigation report ("PSR") prepared by the probation officer disclosed a previous arson conviction in addition to the one for the bar incident.  The PSR added both arson convictions to the two counts of conviction in the present case to conclude that Stoker qualified for the career-offender enhancement under U.S.S.G. § 4B1.1.  The district court agreed, treating all four convictions as crimes of violence.  U.S.S.G. § 4B1.2.  The resulting offense level of twenty-four, combined with a criminal history category of VI, yielded a guideline imprisonment range of 100 to 125 months.  The court issued a sentence of 108 months, to be served consecutive to the Dam Bar arson conviction.  Stoker timely appealed.

## DISCUSSION

Stoker attacks the sufficiency of the evidence supporting his convictions and the career-offender enhancement to his sentence range.  "[D]etermining the weight and credibility of the evidence is solely within the province of the jury."

2

No. 11-60754

*United States v. Salazar*, 542 F.3d 139, 144 (5th Cir. 2008). This court "view[s] the evidence in the light most favorable to the verdict and draw[s] all reasonable inferences from the evidence to support the verdict." *United States v. Percel*, 553 F.3d 903, 910 (5th Cir. 2008) (quoting *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007)). A jury verdict will be upheld if a rational trier of fact could conclude from the evidence, viewed in the light most favorable to the verdict, that the elements of the offense were established beyond a reasonable doubt. *Id.*

Sentencing Guidelines calculations are reviewed for clear error but the legal interpretation and application of the Guidelines are reviewed *de novo*. *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006). As a result, "characterizing an offense as a crime of violence is a purely legal determination" that is also reviewed *de novo*. *United States v. Guevara*, 408 F.3d 252, 261 n.10 (5th Cir. 2005).

## I.     Sufficiency of the Evidence.

Stoker, contending he lacked the requisite intent to retaliate against or threaten Moore, argues that the evidence was insufficient to convict him of either count.

A violation of § 1513(e) requires proof that (1) Stoker knowingly took an action with intent to retaliate; (2) Stoker harmed Moore; and (3) his retaliation was spawned by her assistance to law enforcement.[1] Stoker challenges the

---

[1] Count One was a violation of 18 U.S.C. § 1513(e). It provides:

> Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or

No. 11-60754

evidence only on the first element, although he characterizes Moore's reaction to his letter as extreme. He "merely" intended, as he explained in a letter to the U.S. Attorney, to signify his unhappiness with Moore's "betrayal" but never intended to harm her.

"Intent may, and generally must, be proven circumstantially. Generally, the natural probable consequences of an act may satisfactorily evidence the state of mind accompanying the act, even when a particular mental attitude is a crucial element of the offense." *United States v. Maggitt*, 784 F.2d 590, 593 (5th Cir. 1986). In *Maggitt*, one of the defendants was convicted of a § 1513 violation for telling a witness she was aware of his testimony against her brother and that she was going to kill him for it. The defendant later argued the threat was not serious and that she was just mad at someone who had been a friend and neighbor for years. This court noted that, given those circumstances, "the jury could have concluded that [she] was just 'blowing off steam.'" *Id.* at 594. Nevertheless, when the evidence was viewed in a light most favorable to the prosecution, it had to be acknowledged that "[t]he jury could also have found beyond a reasonable doubt that [the defendant]'s threat was intended in retaliation against [the witness] for his earlier testimony before the grand jury." *Id.*

Here, as in *Maggitt*, the jury was within its bounds to find retaliatory intent on the part of Stoker. While a reasonable person could view such a letter—mailed from prison, by an arsonist (who committed arson as retaliation for being thrown out of a bar), detailing the witness's fear of retaliation—as an

both.

ominous sign, the jury might have accepted Stoker's rationale that he was only expressing displeasure toward Moore. Viewing the evidence in a light most favorable to the government, however, the evidence is sufficient to support what the jury concluded beyond a reasonable doubt: mailing the letter was illegal retaliation against Moore. As *Maggitt* teaches, a jury is free to infer the intent to retaliate from the natural consequences likely to flow from the defendant's actions. The jury here could at least infer Stoker's intent to seriously frighten the witness; fear was a natural probable consequence when she received the investigation report from him.

Likewise, the jury was free to infer that Stoker knew he was mailing a threat to injure Moore when he sent her the report that relayed her fears of what he might do if she testified. A violation of 18 U.S.C. § 876(c) requires proof of the mailing of a communication containing "any threat to injure" the addressee.[2] The jury had to decide whether the communication was intended as a threat. This determination follows a similar analysis to that for intent to retaliate: the natural consequences of an action may be inferred to evidence an intent to cause the reaction (*e.g.*, eliciting fear by mailing a letter that hypothesizes possible retaliation by an arsonist). Moore reasonably construed the communication as a personal threat. Additionally, the subjective intent to *injure* Moore is irrelevant; and it is of no consequence that Stoker neither planned to nor was able to carry out the threat. *See United States v. DeShazo*, 565 F.2d 893, 894–95

---

[2] 18 U.S.C. § 876(c) states:

> Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both.

No. 11-60754

(5th Cir. 1978) (per curiam). The evidence is thus sufficient to support both counts of the conviction.[3]

## II.    Crime-of-Violence Enhancement

Because of the significant impact on his sentence, Stoker seeks a reversal of the district court's career offender designation under U.S.S.G. § 4B1.1. This section enhances the sentence if (a) either of the instant offenses of conviction is a "crime of violence" and, undisputed here, Stoker (b) is over eighteen years of age and (c) has two prior felony convictions (satisfied here by the two convictions for arson, an enumerated crime of violence). According to Stoker, his Sentencing Guidelines range is altered from 100–125 months to 2–33 months if neither conviction qualifies for the career offender enhancements.

Stoker asks us to consider whether either of his instant convictions for violating 18 U.S.C. §§ 1513(e) and 876(c) is a crime of violence, which is defined as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or *threatened use of physical force against the person of another*, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.

---

[3] Stoker also challenges his attorney's trial strategy to prevent the jury from hearing, *inter alia*, Stoker's racist motive for arson of the Dam. Only in rare circumstances does this court examine an ineffective assistance of counsel claim on direct appeal. *See United States v. Gulley*, 526 F.3d 809, 821 (5th Cir. 2008) (per curiam). Here, the lack of a developed record precludes any such inquiry, although it is highly unlikely that the ineffective assistance argument is viable.

No. 11-60754

U.S.S.G. § 4B1.2(a) (emphases added). A crime of violence under § 4B1.2 must therefore (1) contain as an element the "use, attempted use, or threatened use of physical force" against the person of another (the "element clause"); or (2) fall within the list of enumerated offenses; or (3) otherwise involve conduct that presents a serious potential risk of physical injury to another (the "residual clause"). The offenses of conviction here are not enumerated within § 4B1.2(a) or its Commentary. Stoker argues that neither offense satisfies the element clause or the residual clause.

### A.  § 4B1.2(a)(1)—The Element Clause

The element clause of § 4B1.2(a) is more easily addressed. According to *Taylor v. United States*, 495 U.S. 575, 600, 110 S. Ct. 2143, 2159 (1990), we are obliged to analyze the elements of the statute of conviction, in the usual case, rather than the facts of the specific offense. This court applies *Taylor*'s "categorical approach" to interpretations of the Sentencing Guidelines. 18 U.S.C. § 1513(e) criminalizes "[w]hoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, [for assisting law enforcement]." The gravamen of the offense is intentional retaliation that "harms" the person who cooperated truthfully. Although the crime of retaliation may be committed, and was committed here, by a threat reasonably construed to portend physical force, the threatened use of physical force is not an element of this offense. "[A]n element is '[a] constituent part of a claim that must be proved for the claim to succeed.'" *United States v. Vargas-Duran*, 356 F.3d 598, 605 (5th Cir. 2004) (en banc) (quoting *Black's Law Dictionary* 538 (7th ed. 1999)). Section 1513(e) broadly condemns a wide range of retaliatory actions that may inflict only emotional or economic harm; neither the "use, attempted use, or

7

threatened use of physical force" against a victim is an element the government had to prove to convict Stoker. *Cf. United States v. Montgomery*, 402 F.3d 482, 486–87 (5th Cir. 2005) (holding that Texas crime of "retaliation" against a law enforcement officer is not a crime of violence).

In contrast, 18 U.S.C. § 876(c) prohibits mailing "any threat to kidnap any person or *any threat to injure the person* of the addressee or of another." Paring down the statute to the offense of conviction,[4] this count has, as an element, the threat of physical force inherent in threatening to injure "the person" of the victim. In *United States v. Guevara*, 408 F.3d 252, 259–60 (5th Cir. 2005), this court acknowledged a sister circuit's conclusion that a conviction under § 876(c) is a crime of violence according to § 4B1.2(a)(1) (citing *United States v. Left Hand Bull*, 901 F.2d 647, 649 (8th Cir. 1990)). Every other court has agreed with this "element" clause characterization. *See United States v. Archer*, 93 F. App'x 767, 768 (6th Cir. 2004); *United States v. De La Fuente*, 353 F.3d 766, 770–71 & n.3 (9th Cir. 2003); *United States v. Littlejohn*, No. 97-4092, 1998 WL 13526, at *3 (4th Cir. Jan. 15, 1998) (unpublished).

### B. § 4B1.2(a)(2)—The Residual Clause

That § 876(c) alone qualifies as a crime of violence does not suffice to sustain Stoker's 108-month within-guideline sentence. His career offender sentencing range was derived from the ten-year maximum sentence for criminal retaliation. Had the criminal mailing of a threat been the sole basis for the enhancement, its maximum sentence of five years would have yielded a much

---

[4] In applying the *Taylor/Shepard* categorical approach to § 4B1.2(a) crime of violence determinations, courts may "pare down" a disjunctive criminal statute to reference the actual count of conviction, as demonstrated by examining, *inter alia*, charging documents, jury instructions, guilty plea stipulations, and similar documents. *United States v. Mohr*, 554 F.3d 604, 607 (5th Cir. 2009) (citations omitted).

lower sentencing range—51 to 63 months. Consequently, we must consider whether the retaliation conviction may be a crime of violence under the residual clause on the theory that it involves conduct presenting a "serious potential risk of physical injury" to the victim. U.S.S.G. § 4B1.2(a)(2).

Although given the unusual twist that the issue here is whether the crime actually tried to the jury is a crime of violence, we follow essentially the "modified categorical approach," adapted from *Shepard v. United States*, 544 U.S. 13, 20–26, 125 S. Ct. 1254, 1259–63 (2005), under which this court analyzes the nature of the crime described by the statute rather than the underlying facts of the offense when considering the residual clause. *See United States v. Mohr*, 554 F.3d 604, 607 (5th Cir. 2009); *Montgomery*, 402 F.3d at 487.[5] The Supreme Court endorsed this approach to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B), with its nearly identical residual clause for prior offenses, in *James v. United States*, 550 U.S. 192, 202, 127 S. Ct. 1586, 1594 (2007). Alternatively, we may follow this court's holding that under the ACCA "for the purpose of § 4B1.2, a conviction is for a crime of violence when the defendant pleads guilty to an indictment count that alleges conduct that presents a serious potential risk of injury to another." *United States v. Lipscomb*, 619 F.3d 474, 479 (5th Cir. 2010). Each approach will be discussed.

Supreme Court precedent establishes some parameters to classification of an offense as a "crime of violence" via the residual clause. Most relevant here is the Court's decision to limit the ACCA enhancement for "violent felonies" to crimes "similar" to the there-enumerated offenses of burglary, arson, extortion, or the use of explosives. *Begay v. United States*, 553 U.S. 137, 143–44, 128 S. Ct.

---

[5] The offense of conviction may be "pared down" as described in n.4 above, but this is for the purpose of narrowing the inquiry as to the nature of the statute of conviction.

No. 11-60754

1581, 1585–86 (2008). "Similarity," in the Court's view, entails crimes that are (1) "roughly similar, in kind as well as in degree of risk posed, to the examples themselves," *id.* at 143, 1585, and (2) "typically involve purposeful, 'violent,' and 'aggressive' conduct." *Id.* at 144–45, 1586. *Begay* concluded that a prior state conviction for felonious DUI did not fulfill these qualities of similitude and thus was not a crime of violence under ACCA.[6] In so holding, the Court *assumed* that "DUI involves conduct that 'presents a serious potential risk of physical injury to another,'" but nonetheless found the violation "outside the scope" of the residual clause. *Id.* at 141–42, 1584.

Under either *Shepard* or *Begay* as applied in this court, we are compelled to conclude that the retaliation statute under which Stoker was convicted does not necessarily entail "conduct that presents a serious potential risk of physical injury to another." The statute, as previously noted, is broadly framed to include all conceivable harms inflicted by a retaliating defendant. From this standpoint alone, it appears to fail the test of posing, by its nature, a serious risk of physical injury to victims. The actions of such a defendant are indeed "purposeful" and "aggressive," two qualities identified in *Begay*, but they are not necessarily "violent." Nor does § 1513(e) appear "similar" to any of the crimes enumerated in Commentary to § 4B1.2(a), except perhaps extortion. *Begay* referred to the ALI Model Penal Code definition of extortion as "'purposely' obtaining property of another, through threat of, *e.g.*, inflicting 'bodily injury.'" *Id.* at 145, 1586 (citing ALI Model Penal Code § 223.4(1) (1985)). Extortion thus connotes a crime

---

[6] "Rather, we hold only that, for purposes of the particular statutory provision before us, a prior record of DUI, a strict liability crime, differs from a prior record of violent and aggressive crimes committed intentionally such as arson, burglary, extortion, or crimes involving the use of explosives." *Begay v. United States*, 553 U.S. 137, 148, 128 S. Ct. 1581, 1588 (2008).

of purpose, threat, and inherent serious potential risk of physical injury as property is extracted from the victim. The retaliation statute, too, involves a criminal purpose and threat to harm but, unlike extortion, the harm explicitly need not involve physical injury. Indeed, this limitation of § 1513(e) would seem to be emphasized by the companion provision, § 1513(b), which criminalizes retaliation in the form of physical violence or a threat of physical violence.

Fifth Circuit precedent also lends authority to this conclusion. Before *Begay*, this court had ruled that a violation of a Texas anti-retaliation statute—"triggered when someone 'intentionally or knowingly harms or threatens to harm another by an unlawful act . . . in retaliation for [the person's] service or status . . . as a . . . public servant,'"—was not a violent felony under ACCA's residual clause. *Montgomery*, 402 F.3d at 488 (quoting Texas Pen. Code Ann. § 36.06(a)(1)(A) (2003)). As here, the statute could be violated by threatening a police officer with financial or reputational harm. *Id.* But the court there did not look past the nature of the statute and, consequently, the "mere act of a verbal threat," *id.* at 489, was not found to necessarily pose a risk of physical injury.[7] *Montgomery* is not materially distinguishable from this case, except that it characterized a defendant's prior conviction rather than the instant offense of conviction.

Finally, one case that might appear to support finding the retaliation conviction within the residual clause is distinguishable. In *United States v. Mohr*, this court applied the residual clause, post-*Begay*, to a defendant's prior

---

[7] *But see United States v. Sawyers*, 409 F.3d 732, 742–43 (6th Cir. 2005) (holding Tennessee retaliation crime falls within the residual clause). The conflict between *Montgomery* and *Sawyers* was noted by Justice Alito in *Chambers v. United States*, 555 U.S. 122, 133 n.2, 129 S. Ct. 687, 694 n.2 (2009) (Alito, J., concurring in the judgment).

conviction for stalking under Florida law. The court held that sufficient proof of the underlying crime was offered, pursuant to *Shepard*, to "pare down" a disjunctive criminal statute and describe the defendant's conduct as following and harassing the victims with threats of bodily injury. *Mohr*, 554 F.3d at 610. Unlike *Mohr*, there is no disjunctive statute to pare down in this case. And unlike *Mohr*, the threat here was not accompanied by the physical acts of pursuing the victims, which lent force to the conclusion that a serious potential risk of physical violence existed.

Because Stoker's offense of conviction, rather than a prior conviction, must be characterized for crime of violence purposes, we turn also to *Lipscomb*, which discussed extensively the Guidelines Commentary to § 4B1.2. *Lipscomb* held that the "conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted" may be used to apply the residual clause. *Lipscomb*, 619 F.3d at 478 (quoting § 4B1.2, Application Note 1).

The indictment here alleged:

> 10.    On or about March 29, 2011, in the Northern District of Mississippi, WAYNE ALLEN STOKER, defendant, did knowingly, with intent to retaliate, take an action harmful to Donna Moore for her providing to a law enforcement officer truthful information relating to the commission or possible commission of a Federal offense, that is; WAYNE ALLEN STOKER, defendant, mailed an envelope to Donna Moore at her home address that contained only one item: the first page of the Moore ROI describing the information Donna Moore provided to the ATF, including WAYNE ALLEN STOKER'S confession that he burned down the Dam Bar and Donna Moore's fear of retribution from WAYNE ALLEN STOKER.
> 
> All in violation of Title 18, United States Code, Section 1513(e).

For two reasons, the conduct charged falls outside the residual clause. First, it alleges "an action harmful to Donna Moore" but says nothing that suggests the

No. 11-60754

retaliation posed a serious potential risk of physical violence against her. Second, as has been noted, § 1513(e) refers to "harmful" retaliation as including "interference with the lawful employment or livelihood of a person," whereas another provision, § 1513(b), prohibits retaliation inflicted by physical violence or a threat of physical violence. Section 1513(e), in its terms and as charged, exceeds the physical violence necessary for application of the residual clause.

## CONCLUSION

The evidence was sufficient to convict Stoker on both counts. However, because his crime of retaliation could not be a crime of violence under the career offender guideline, the court misapplied the longest noted guidelines range. On remand, it must resentence Stoker as a career offender based on his § 876(c) conviction, together with any adjustment deemed appropriate.

Conviction **AFFIRMED**; Sentence **VACATED** and **REMANDED**.

No. 11-60754

EDITH H. JONES, Circuit Judge, specially concurring, joined by GARZA, Circuit Judge.

Although bound by precedent to concur in reversing Stoker's sentence, I would have otherwise affirmed.

*Lipscomb* binds us in the straitjacket of the modified categorical approach and the "conduct charged in the indictment" when determining if Stoker's retaliation offense of conviction was a crime of violence. This means the sentencing court must ignore the actual trial record and the facts and inferences drawn from the testimony to make that consequential enhancement. I do not believe the Supreme Court or the United States Sentencing Commission intended this counter-intuitive procedure. I write in hope that it may someday be reversed.[1]

As the Eighth Circuit recently noted, "It is rare that a dispute concerning the career offender enhancement revolves around the instant offense of conviction. This paradigm affects our analysis." *United States v Williams*, 690 F.3d 1056, 1069 (8th Cir. 2012). *Williams* departed from the modified categorical approach and went on to "consider the readily available trial evidence" to assess whether the defendant's conduct for which he had been convicted qualified as a crime of violence under § 4B1.2(a)(2). *Id.* Based on the record, the court's affirmative conclusion was easily reached. *Id.* The Tenth Circuit has also evaluated the full trial court record in order to characterize the defendant's offense of conviction properly under the crime of violence guidelines. *United States v. Riggans*, 254 F.3d 1200, 1203–04 (10th Cir. 2001). *But cf. United States v. Piccolo*, 441 F.3d 1084, 1086–87 (9th Cir. 2006) (insisting on

---

[1] I generally agree with Judge King's concurrence in *Lipscomb*, 619 F.3d 474, 479 (5th Cir. 2010), which makes similar points.

No. 11-60754

modified categorical approach for the instant offense of conviction). For several reasons, this court should adopt the whole-record approach.

The genesis of the modified categorical approach rests on interpretations of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), which dramatically enhances prison terms of felons who illegally possess firearms if they have three prior convictions for "violent felonies." *Taylor* advanced two principal grounds for classifying "violent felonies" under the ACCA residual clause according to the generic elements of the prior offenses rather than offense-specific conduct. First, Congress intended that the enhanced federal penalties would be based on uniform, federal definitions of the prior convictions rather than on the numerous vagaries of state criminal statutes. Second, offense-specific inquiries about prior convictions would be impractical, complex, and potentially unfair. While the Supreme Court has never specifically dictated comparability between its ACCA enhancement cases and the Guidelines career offender enhancement (and indeed has never decided a Guidelines career offender case), lower courts have naturally treated the enhancements, at least for prior convictions, *in pari materia* because of their similar language.

Like must be treated alike under the rule of law, but courts must also recognize when the context and precise language of rules render cases dissimilar. The Sentencing Commission adopted the ACCA's elements test and residual clause almost literally when it crafted the career offender enhancement. U.S.S.G. § 4B1.2. Still, several relevant distinctions from ACCA are evident in the language, application, and purpose of the Guidelines.

First, the Guidelines definition of a crime of violence (§ 4B1.2) clarifies an enhancement provision (§ 4B1.1) that describes a "career offender" in terms (here pertinent) of his "instant offense of conviction" and a minimum of two prior

15

convictions, all of which must be felonies and crimes of violence or controlled substance offenses. ACCA, in contrast, inflicts a mandatory minimum sentence on a conviction for a federal firearms violation—itself not necessarily a crime of violence—where the defendant has three prior felony convictions for "violent felonies." All ACCA prior offenses are past offenses, while one of the § 4B1.1 offenses is always an instant offense of conviction.

Next, the Guidelines definition of a crime of violence tracks the language of ACCA in both the elements and residual clause, but the Guidelines depart from ACCA in the career offender (§ 4B1.1) usage. This is explained in the Commentary to § 4B1.2, Application Note 1, which expands the definition of "crimes of violence" to include as enumerated offenses murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. The residual clause is also expanded in this Application Note by identifying: "the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted" as that which, "by its nature, presented a serious potential risk of physical injury to another." Other specific situations in which a crime of violence is included or excluded from the Guidelines usage occupy the following eight paragraphs of this Commentary. Application Note 2 then states:

> Section 4B1.1 (Career Offender) expressly provides that the instant and prior offenses must be crimes of violence or controlled substance offenses of which the defendant was convicted. Therefore, in determining whether an offense is a crime of violence or controlled substance [offense] for the purposes of § 4B1.1 (Career Offender), the offense of conviction (*i.e.*, *the conduct of which the defendant was convicted*) is the focus of inquiry. (Emphasis added).

Reinforcing these distinctions, the Guidelines separately define an "Armed

Career Criminal" in § 4B1.4, a provision designed to embody the requirements of ACCA and apply the mandatory statutory minima in a structured manner. While this guideline does not superfluously duplicate ACCA's statutory definition of "violent felonies," the Commentary Application Note 1 to this provision warns that "the definitions of 'violent felony' and 'serious drug offense' in 18 U.S.C. § 924(e)(2) are _not identical_ to the definitions of 'crime of violence' and 'controlled substance offense' used in § 4B1.1 (Career Offender)" (emphasis added).

These linguistic distinctions indicate to me that (a) the "instant offense of conviction" in § 4B1.1 does not fully track an ACCA "violent felony;" (b) a "crime of violence" in the § 4B1.2(b) residual clause is specifically concerned with the defendant's "conduct set forth (*i.e.*, expressly charged);" and (c) "the offense of conviction (*i.e.*, the conduct of which the defendant was convicted) is the focus of the inquiry." This language may not require an offense specific inquiry in order to characterize offenses as crimes of violence, but unlike the Supreme Court's interpretation of ACCA, it certainly does not preclude such inquiry where appropriate.

The career offender provision, along with its crime of violence definition, must also be fit within the general framework of the Guidelines—a framework much more flexible than that of ACCA. While ACCA is a single statute interpreted consistent with the intent of Congress, the Guidelines' intent is to structure and inform criminal sentencing across the wide range of federal offenses. Effectuating this purpose, the Guidelines ordinarily allow the sentencing court to consider all factors bearing on the seriousness of the instant crime of conviction as well as the defendant's criminal history. Strict rules do not govern the admissibility of evidence, *United States v. Rodriguez*, 897 F.2d

No. 11-60754

1324, 1328 (5th Cir. 1990), the court makes determinations based on a preponderance standard, *United States v. Thomas*, 690 F.3d 358, 374 (5th Cir. 2012), and the findings in the presentence report may be accepted by the court unless the defendant meets the burden of adducing contradictory evidence. *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995). Significantly, the Guidelines are no longer held to bind the discretion of sentencing courts. *United States v. Booker*, 543 U.S. 220, 245, 125 S. Ct. 738, 756–57 (2005). The overarching methodology of the Guidelines cannot, of course, trump their specific language, but here, where the language does not exclude considering the facts of the offense of conviction, the methodology behind guideline sentencing reinforces an offense-specific approach.

The contrast between the Guidelines and ACCA is accentuated because none of the principles behind *Taylor*'s adoption of the categorical approach applies in this context. First, because the language and context of ACCA's residual clause are different from the Guidelines, despite their facially similar wording, the ACCA's language and Congressional intent are insufficient as a guide. The concern in *Taylor* for uniform federal definitions in pursuit of uniform application of mandatory sentence enhancements is fundamentally different from achieving a defendant-specific sentence under 18 U.S.C. § 3553(a) within ranges of punishment. *Taylor*'s other concern, that offense-specific examination of prior convictions may involve mini-trials and is exceedingly complex and potentially unfair, cannot be lodged when the crime of violence question arises from the "instant offense of conviction." Relevant to this offense, the court has before it the entire record of the proceedings (whether of trial or guilty plea), has heard the evidence, and has the thorough report in the PSR concerning not only the instant offense but also the defendant's background.

18

No. 11-60754

There will be no factual uncertainty underlying the crime of violence determination.

Finally, to the extent that the categorical approach of *Taylor* and its progeny has proven far more difficult in application than the Supreme Court probably foresaw,[2] courts applying the Guidelines to the "instant offense of conviction" should not feel compelled to follow *Taylor* when that line of cases is not mandatory. The courts' role differs between statutory interpretation under ACCA and sentencing "the instant offense of conviction" under the guidelines. ACCA's interpretation revolves around the need to define federal crimes consistently. Determining whether an individual federal defendant is a "career offender," however, ought to be heavily dependent on whether the "instant conviction"—the motivating force behind this enhancement—is a crime of violence. It is reasonable and in accord with the whole-offense approach of the Guidelines to make that determination based not on an abstract description of the "probabilistic" likelihood that serious physical injury will be inflicted by the statutorily defined offense,[3] but on the reality of the defendant's instant crime.

For these reasons, I believe that the court should have been entitled to review the whole record in order to decide whether Stoker's conviction for illegal retaliation, violative of 18 U.S.C. § 1513(e), was a crime of violence. As in the *Williams* case, this perspective yields a ready affirmative answer. The jury

---

[2] *See Chambers*, 555 U.S. at 126, 129 S. Ct. at 690 ("This categorical approach requires courts to choose the right category. And sometimes the choice is not obvious."); *id.* at 134, 695 (Alito, J., concurring in the judgment) ("At this point, the only tenable, long-term solution is for Congress to formulate a specific list of expressly defined crimes that are deemed to be worthy of ACCA's sentencing enhancement. . . . And that approach is the only way to right ACCA's ship.").

[3] *See James v. United States*, 550 U.S. 192, 207–08, 127 S. Ct. 1586, 1597 (2007).

19

No. 11-60754

found that Stoker's letter to Moore, sent one day after he was sentenced for the Dam Bar arson, had a singular purpose: to paralyze her with fear, a fear not unreasonable under the circumstances, that he would retaliate against her with arson as he did against the owner of the Dam Bar. Based solely on what she knew of Stoker, the threat posed a serious potential risk of physical injury to Moore. And this is true despite his being imprisoned for the time being.[4] Stoker's illegal retaliation thus fell within the residual clause of § 4B1.2(b) as a crime of violence.

---

[4] Even attempts are treated as substantive crimes under the Sentencing Guidelines, *see* U.S.S.G. § 2X1.1, and are not excluded by the ACCA. *James*, 550 U.S. at 198, 1591.