NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0428n.06

No. 18-3541

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 16, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| JOY EDWARDS, | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |

BEFORE: BATCHELDER, ROGERS, and THAPAR, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Joy Edwards made numerous derogatory posts on Facebook about a confidential informant who testified against her brothers during their criminal trial. The Facebook posts revealed the informant's identity and called him—among other things—a "snitch." Edwards was indicted on a single count of retaliating against a witness in violation of 18 U.S.C § 1513(e). At a bench trial, the district court found that the informant suffered harm as a result of these Facebook posts and that the posts were intended to retaliate against the informant. Edwards was convicted and sentenced to short terms of prison and lesser forms of confinement. Edwards appeals. We affirm.

**I.**

In 2015, D.B. agreed to work with law enforcement as a confidential informant against two brothers in the town of Steubenville, Ohio. These two brothers, Fred and David McShan, were suspected of running a drug-trafficking operation. D.B. wore audio and video surveillance

equipment while performing controlled buys from the McShan brothers. As a result of D.B.'s assistance, law enforcement indicted the McShan brothers on multiple charges, including conspiracy to possess with intent to distribute heroin. D.B. also testified at the McShan brothers' trial.

The trial took place in Columbus, Ohio, 150 miles from Steubenville. D.B. testified in an open, public courtroom. A number of Steubenville residents attended the trial. During the trial, United States Marshals had to remove several of the McShan brothers' relatives and friends from the courtroom for recording witness testimony and taking pictures of witnesses, including D.B., on the stand. A jury found both brothers guilty and the district court sentenced Fred to 288 months in prison and David to 74 months in prison.

Several months after the trial, Steubenville residents began posting on the social-media website Facebook pictures of D.B testifying at the trial. Among the people to do so was Joy Edwards, a sister of the McShan brothers. Over the course of several days, some of her online activity included:

- Re-posting another user's photo of D.B. on the witness stand and calling him a "snitch" in the comments section
- Commenting on her own post saying "f*** him," "Look at that bitch ass snitch lips! They are crack up and ashey white from running it so much! His bitch ass needs some WD40!"
- Re-posting another user's doctored photo of D.B. holding a t-shirt with a police badge on it
- Re-posting another user's photo of D.B. with the caption "stop snitching" over it, to which Edwards added, "Snitch ass bitch"
- Commenting on her own post in response to another user's question about the identity of D.B., saying, "This guy is snitching! He snitched on my brothers! And lied about everything!"
- Re-posting another user's photo of D.B. with the caption "Snitching like a bitch"
- Re-posting another user's picture featuring hands in police handcuffs with the caption "Man up . . . Shut your mouth. Take the charge and don't snitch."
- "Liked" numerous other users' posts of similar material

Edwards did not capture any photos of D.B. at the trial, nor did she create any of the images herself. She primarily re-posted others' images and added her own captions. Her Facebook page was set to "Public," meaning that any one of her more than 600 Facebook friends could share her posts and anyone on Facebook could view them. These Facebook posts by Edwards and others revealed and broadcast D.B.'s name, nickname, location, family members, and his cooperation with law enforcement—in addition to generating numerous other derogatory comments by other persons in the Steubenville area.

After the nearly week-long flurry of Facebook posts regarding D.B., the government indicted Edwards on one count of retaliating against a witness in violation of 18 U.S.C. § 1513(e). The government did not indict any other persons. Edwards moved to dismiss the indictment, arguing that § 1513(e) violates the First Amendment, is unconstitutionally vague, and is unconstitutionally overbroad. The district court denied the motion to dismiss, holding that § 1513(e) is consistent with the Supreme Court's ruling in *Virginia v. Black*, 538 U.S. 343 (2003), because it requires as an element of the crime "proof that the defendant intended to retaliate." Summarizing the order, the district court said, "[i]t is the scienter requirement of the statute that renders it constitutional."

Edwards waived her right to a trial by a jury. At the bench trial, the government called three witnesses. U.S. Marshal Denzler testified about the process of investigating Edwards' Facebook posts. DEA Special Agent Heufelder testified that law enforcement considers the label "snitch" to be a threat to its informants. D.B. testified about how his life changed after the Facebook posts, including his increased difficulty in seeing his children, decreased employment opportunities in the area, and his fear for his safety and for the safety of his family. At the close of the government's arguments, Edwards did not present a defense, and instead orally moved for

judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The district court denied the motion and found Edwards guilty under § 1513(e), sentencing her to three months in prison, followed by three months in a halfway house, three months of home detention, and three years on supervised release.

On appeal, Edwards makes three claims challenging her conviction. Edwards argues that, (1) there was insufficient evidence to support her conviction; (2) § 1513(e) is unconstitutionally vague; (3) she was selectively prosecuted by the government.

## II.

## A.

First, Edwards argues that there was insufficient evidence for her conviction and therefore the district court erred in denying her Rule 29 motion. "Although we review the district court's denial of [a motion for judgment of acquittal] de novo, we must affirm its decision if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *United States v. Canan*, 48 F.3d 954, 962 (6th Cir. 1995). Section 1513(e) of the witness retaliation statute states:

> Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1513(e). Edwards concedes that she knowingly took an action and that D.B. has suffered harm. However, Edwards complains that there was insufficient evidence to find beyond a reasonable doubt that (a) she took the action with intent to retaliate, and that (b) her actions were the cause of D.B.'s harm.

*Intent*.[1]  Intent may, and generally must, be proven with circumstantial evidence.  *United States v. Ross*, 502 F.3d 521, 530 (6th Cir. 2007).  There is no question that Edwards's posts were in response to D.B.'s testimony.  She repeatedly referred to D.B. as a "snitch" and a "rat."  When asked in the comments section by a friend who D.B. was,[2] Edwards shot back that he "snitched on [her] brothers" and that she thought he lied about them.  She also posted that "His bitch ass needs some WD40!"

The district court found credible the government witness's testimony about the increased risk of harm associated with the label "snitch."  The trier of fact "is free to infer the intent to retaliate from the natural consequences likely to flow from the defendant's actions." *United States v. Stoker*, 706 F.3d 643, 646 (5th Cir. 2013).  Given the context of the Facebook posts, particularly the negative comments about D.B. that were generated by the posts, a rational trier of fact could easily conclude beyond a reasonable doubt that someone who continued to engage in that activity intended the foreseeable negative consequences.  Indeed, the district court found that "there is no competing or other purpose for which Defendant's postings were made, other than to retaliate."

Edwards counters with three arguments.  First, Edwards draws attention to the statute's lack of definition for "retaliate."  But "when a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning."  *Smith v. United States*, 508 U.S. 223, 228 (1993).  Second, Edwards complains everything she communicated online was both accurate and already public knowledge.  Again, this has nothing to do with whether Edwards intended to retaliate against D.B by disseminating allegedly true and accurate information.  Third, Edwards points out that she did not create any of the content she shared.  However, Edwards was convicted

---

[1] The government argues that the issue of intent was forfeited because it was not included with specificity in the Rule 29 motion at trial.  While that appears to be true, the record also shows that the government conceded that the intent element was "what the whole case is about" when discussing the Rule 29 motion orally with the district court judge.

[2] In context, the commenter was basically asking Edwards, "Why are you posting this?"

for using the content to spread awareness of D.B.'s performance, not for creating the content at hand—which is, again, irrelevant to the question of her intent in sharing the content. Fourth, Edwards claims that "she never advocated any retaliatory conduct (physical violence or otherwise) against [D.B.]." However, § 1513(e) does not require that a defendant expressly advocate retaliation. It rather applies to "[w]hoever knowingly, with intent to retaliate, makes any action harmful" to a government witness. 18 § U.S.C. § 1513(e). There is evidence upon which a rational trier-of-fact could find retaliatory intent, and Edwards does nothing to call into question the *sufficiency of that evidence* as to the intent element of § 1513(e).

*Causation*. Edwards concedes D.B. suffered harm from the collective Facebook posts. But because numerous other people posted (often much worse) things about D.B., Edwards argues, her posts alone cannot be sufficient evidence to establish that she caused D.B.'s harm. Unfortunately for Edwards, federal criminal law does not employ a several liability standard. Indeed, the statute clearly applies to "Whoever . . . takes any action harmful to any person . . . ." 18 U.S.C. § 1513(e). In this case, there was evidence of close temporal proximity between Edwards' Facebook posts and the subsequent harm suffered by D.B., making it possible for a rational trier of fact to determine that § 1513(e)'s causation element was satisfied. Although D.B. conceded that some Steubenville residents knew about his cooperation with the government before Edwards posted on Facebook, he also claimed that "[w]hen the photos got posted, that's when mostly the drama picked up." D.B. testified that he received "a lot of friend requests" from strangers on Facebook after Edwards posted, which caused him to feel "a little intimidated" and to doubt whether he "could safely return to Steubenville." He also feared for the safety of his family, especially given that his little sister received a threat after Edwards posted on Facebook in May of 2017. In light of these concerns, D.B. reduced the frequency of his family visits and refrained from living with family

members in Steubenville.  Viewing this testimony in the light most favorable to the government, there was sufficient evidence for a rational trier of fact to conclude that Edwards caused D.B.'s harm by sharing the posts on Facebook.

**B.**

Next, Edwards argues that § 1513(e) is unconstitutionally vague.  We review de novo questions of law.  *United States v. Hill*, 167 F.3d 1055, 1063 (6th Cir. 1999).  A statute is unconstitutionally vague if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or if the statute "authorizes or even encourages arbitrary and discriminatory enforcement."  *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  Criminal statutes are held to a higher standard than civil statutes.  *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982).  In criminal statutes, "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."  *Id*.

As to the notice component of her vagueness challenge, Edwards argues that "an ordinary person would not likely realize that he is subject to criminal prosecution for everyday activity on Facebook."  We disagree.  The statute prohibits the taking of "any action harmful to any person." 18 U.S.C. § 1513(e).  This is plain, common language.  *Hill*, 530 U.S. at 732.  None of the words used is particularly complex or exclusive to arcane legal texts.  An ordinary person can understand that posting on Facebook falls under "any action."  Indeed, Edwards has no trouble in her brief paraphrasing even the most advanced word of the statute, "retaliate," using more common language: "to get revenge."  Furthermore, the scienter requirements of "knowingly" and "with intent to retaliate" dramatically narrow the universe of possible offending activity such that an ordinary person has notice of what conduct is prohibited.  *See Hill*, 530 U.S. at 732; *see also*

*Village of Hoffman Estates*, 455 U.S. at 499. Is the language of the statute potentially sweeping?[3] Absolutely. But is it vague such that an ordinary person could not understand what conduct it prohibits? No.

As to the enforcement component of her vagueness challenge, Edwards argues that "one need to look no further than this case" for evidence of arbitrary enforcement. Edwards complains that many others engaged in similar or worse behavior, but she alone was prosecuted—evidence of arbitrary enforcement, she argues. She also claims she was "[s]ingl[ed] out . . . for prosecution just because she is related to the McShan brothers"—evidence of discriminatory enforcement, she argues. However, Edwards unwittingly highlights the flaw in this argument. The government must prove beyond a reasonable doubt that an offender had an "intent to retaliate" in order to prevail on a § 1513(e) prosecution. In common parlance, "to retaliate" is to return injury for perceived injury. It could be difficult for the government to prove that these Facebook postings by a person unrelated to the McShan brothers and thus unaffected by D.B.'s testimony were done to "retaliate" against D.B. Not so with Edwards. Family relations have long been recognized in law to be extensions of the personal domain in all kinds of contexts. *See Salman v. United States*, 137 S. Ct. 420, 429 (2016) (holding that gifts to family relatives accrue to personal benefit). The government has broad discretion to choose among its potential cases which to bring for prosecution. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). That the government chose to bring only its strongest § 1513(e) case is unremarkable, and certainly not evidence of arbitrary enforcement.

---

[3] Edwards abandoned her First Amendment overbreadth claim on appeal. Nothing in this opinion should be construed to comment on whether § 1513(e) is overbroad or violative of the First Amendment. That issue was neither brought nor briefed before us.

**C.**

Finally, Edwards argues that the government selectively prosecuted her. A claim of selective or vindictive prosecution must be made on a motion before trial. Fed. R. Crim. P. 12(b)(3)(A)(iv). Here, it was not. Because this claim is first raised on appeal, we review for plain error. *United States v. Soto*, 794 F.3d 635, 654–55 (6th Cir. 2015) (holding that untimely 12(b)(3) motions raised for the first time on appeal are subject to plain error review). "Plain error exists where there is (1) error (2) that was obvious or clear, (3) that affected [the] defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Donadeo*, 910 F.3d 886, 893 (6th Cir. 2018) (internal quotation marks and citations omitted). "Accordingly, plain error is a standard that is extremely deferential to the district court, and it should be found sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice." *Id.* (internal quotation marks omitted).

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). Among those forbidden reasons are a defendant's "race, religion, or the desire to prevent the exercise of [the defendant's] constitutional rights." *United States v. Hazel*, 696 F.2d 473, 474 (6th Cir. 1983). In order to succeed on a selective-prosecution claim, the defendant must "present clear evidence" that (1) the government had a discriminatory intent, and (2) that the prosecutorial policy had a discriminatory effect. *Armstrong*, 517 U.S. at 465 (internal quotation marks omitted). *See also United States v. Jones*, 159 F.3d 969, 976 (6th Cir. 1998).

Edwards claims that her exercise of her First Amendment rights on Facebook was the motivation for her prosecution, and because she was the only person among many other people

engaged in "similar or worse activity" to have been prosecuted, she must have been selectively prosecuted. Edwards misunderstands the nature of a proper selective-prosecution claim.

Selective-prosecution occurs when impermissible considerations motivate the prosecution of an individual but otherwise "similarly situated individuals" who could have been charged "were not similarly prosecuted." *Jones*, 159 F.3d at 977. Specifically, those impermissible considerations must be *unrelated* to the criminal acts for which the person was prosecuted. A valid selective-prosecution claim might arise, for example, if a group of individuals conspired to rob a bank but only the racial minority among them was prosecuted; or if a number of protestors were trespassing on private property but the only protestor who was prosecuted was known to be a vocal critic of the local police department.

With Edwards, there is no such dynamic. Of course, by virtue of her prosecution, Edwards was *selected* for it. And yes, as the government agrees, it prosecuted her because of her Facebook posts. But her Facebooks posts were not the "motivation" for her being prosecuted for an otherwise unrelated crime—*her Facebook posts were the crime*. It is hardly remarkable that in response to the flurry of online activity endangering D.B., the government indicted only the person against whom the government had the strongest case. Furthermore, Edwards makes no claim that the government's selection of her was in bad faith, nor does she produce any "clear evidence" that would have satisfied her burden had she brought a timely 12(b)(3) motion, let alone one we review for plain error.

### III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.