# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1040
_____

United States of America

*Plaintiff - Appellee*

v.

Tally Colombe

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Pierre

_____

Submitted: February 14, 2020
Filed: July 9, 2020

_____

Before LOKEN, BENTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

A jury convicted Tally Colombe of conspiracy to retaliate against a witness in violation of 18 U.S.C. § 1513(e) and (f). Colombe appeals, arguing there was insufficient evidence to support her conviction.

# I.

Colombe was once the executive director of Hunkpati Investments, a not-for-profit community development financial institution on the Crow Creek Indian Reservation in central South Dakota. In December 2016, Colombe was indicted on multiple charges in federal court based on evidence that she was embezzling and misusing Hunkpati's funds. In June 2017, she pleaded guilty to wire fraud and embezzlement of federal funds and resigned as executive director. Her sentencing was scheduled for September 19, 2017.

Meanwhile, the board of directors hired Lahoma Simmons to replace Colombe as interim executive director. Simmons signed a three-month contract for July, August, and September 2017. While under contract with Hunkpati, Simmons continued to live at her home in Oklahoma, and traveled as necessary to South Dakota for her work at Hunkpati. In August 2017, Simmons discovered what she believed was evidence that Colombe had continued to misappropriate Hunkpati funds even after she had been indicted. Simmons brought this evidence to the federal officials prosecuting Colombe's case.

The facts relevant to the current case began after Colombe self-surrendered[1] on September 1, 2017, and was incarcerated at the Hughes County Jail while awaiting sentencing in her original federal prosecution. On September 6, Simmons received a subpoena to testify at Colombe's sentencing hearing, and she told Hunkpati's board of directors that she would be testifying. On September 8, Colombe made two phone calls from the jail to her twin sister Tiffany Monteau. These calls were recorded.

In the first call, Colombe told Tiffany that Simmons and another Hunkpati employee, Elaine, "are sending the Feds all kinds of stuff about me." She said that the

---

[1]After Colombe's guilty plea hearing on June 27, 2017, the district court ordered Colombe to self-report to the United States Marshal Service on September 1, 2017.

two "are putting the boots to me." Colombe told her sister, "You need to call Stef or grandma and go tell them to lock up that building and don't let them have access to anything." Tiffany responded, "Okay." "Stef" is Colombe's nephew, Stefen Monteau. "Grandma" is Elnita Rank, Colombe's grandmother who owned the community center where Hunkpati leased office space.

About an hour later, Colombe called her sister a second time. In that conversation, Tiffany reported to Colombe that "grandma sent Ronda down to . . . kick Lahoma [Simmons] and Elaine out of there; . . . and Ronda went on a rampage after Lahoma and Elaine." Tiffany also told Colombe, "Grandma is kicking them out of that building; grandma is pissed . . . because of Lahoma and Elaine, whatever they did, sent you to Feds . . . ." "Ronda" is Ronda Hawk, Colombe's aunt. On September 8, Simmons was not at the Hunkpati offices. Simmons was home in Oklahoma, and she did not travel to South Dakota until three days later.

On September 12, Simmons went to the Hunkpati office. She believed Hunkpati's financial statements were inaccurate, so she brought with her a forensic accountant, Florence Ludka, to help recreate the statements and organize Hunkpati's records. It was on that day that Colombe's family members (and later co-defendants) confronted Simmons and Ludka at the Hunkpati office. Ronda Hawk arrived in the morning. She told Simmons that Hunkpati had an unpaid utility bill and demanded immediate payment. Simmons responded that Hunkpati had only $35 in its bank account.

Ronda left but returned approximately two hours later with her sister, Kristal Hawk. The sisters took Simmons into an office, closed and locked the door, and again demanded immediate payment for the utility bill. Simmons explained that Hunkpati could not pay the bill because Colombe had stolen so much of Hunkpati's cash. The Hawk sisters left.

Kristal returned that afternoon, this time with Elnita and Stefen. Kristal grabbed Simmons's arm, leaving bruises and asking her again for cash to pay the utility bill. Kristal made comments like, "This is what you get for testifying against Tally," and she and Elnita made comments about "karma." Elnita, who was in a wheelchair, blocked the hallway and said, "If you are going to testify, this is what you get," and "It won't do you any good to call the police as I control them." Simmons responded that she would not leave without her personal belongings, including a purse, backpack, computer, and paperwork. Elnita directed Stefen to get the purse and backpack, but to leave the computer. Ultimately, Simmons left with her purse and backpack, but without her computer and paperwork, which were returned to her only later by a member of the Hunkpati board of directors.

On September 19, 2017, the district court sentenced Colombe to 27 months of imprisonment on the wire fraud and embezzlement charges. Simmons testified at Colombe's sentencing hearing.

On February 6, 2018, Colombe, along with Tiffany Monteau, Elnita Rank, Ronda Hawk, Kristal Hawk, and Stefen Monteau, were charged with conspiracy to retaliate against a witness. The defendants proceeded to trial. At the close of the government's case, Colombe moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The district court[2] reserved its decision, and the jury found all defendants, except Stefen Monteau, guilty. The district court then denied Colombe's motion and later sentenced her to four months' imprisonment, to be served consecutively to her sentence on the wire fraud and embezzlement charges. Colombe appeals, challenging the sufficiency of the evidence against her.

---

[2]The Honorable Roberto A. Lange, now Chief Judge, United States District Court for the District of South Dakota.

## II.

We review de novo the denial of a motion for judgment of acquittal. <u>United States v. Clark</u>, 668 F.3d 568, 573 (8th Cir. 2012). We view the evidence in the light most favorable to the verdict and draw all reasonable inferences in favor of the verdict. <u>Id.</u> Reversal is warranted only if no reasonable jury could find the defendant guilty beyond a reasonable doubt. <u>Id.</u>

Colombe was convicted of conspiracy to retaliate against a witness, in violation of 18 U.S.C. § 1513(e) and (f). Under those provisions:

> (e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.
>
> (f) Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

A violation of 18 U.S.C. § 1513(e) requires proof that the defendant (1) knowingly took an action with intent to retaliate; (2) the defendant harmed the victim; and (3) the retaliation was in response to the victim's assistance to law enforcement. <u>See</u> <u>United States v. Camick</u>, 796 F.3d 1206, 1220 (10th Cir. 2015); <u>United States v. Stoker</u>, 706 F.3d 643, 645 (5th Cir. 2013).

To convict a defendant of conspiracy, the government must prove beyond a reasonable doubt that "there was an agreement to achieve an illegal purpose, that the defendant knew of the agreement, and that the defendant knowingly became part of that agreement." <u>United States v. Morris</u>, 723 F.3d 934, 939 (8th Cir. 2013). In

addition, the government must prove at least one member of the conspiracy committed an overt act—that is, "at least one conspirator acted to achieve the agreement's illegal purpose." United States v. Slaughter, 128 F.3d 623, 628 (8th Cir. 1997). "A defendant may be convicted for even a minor role in the conspiracy, so long as the government proves beyond a reasonable doubt that he or she was a member of the conspiracy." United States v. Jenkins-Watts, 574 F.3d 950, 959 (8th Cir. 2009) (cleaned up).

A reasonable jury could believe Colombe and her co-defendants formed a conspiracy. Colombe called her sister, Tiffany Monteau, and complained that Simmons was "sending the Feds all kinds of stuff about" her and directed her to call Elnita Rank, who owned the building where the Hunkpati offices were, "and go tell [her] to lock up that building and don't let [Simmons] have access to anything." To this, Tiffany responded, "okay." A reasonable jury could understand this conversation as evidence of a knowing agreement between Colombe and her sister to retaliate against Simmons for providing evidence to federal investigators.

Colombe argues that Tiffany's "okay" did not indicate agreement, but rather an effort to soothe her incarcerated sister. The jury was free, but not obligated, to credit this explanation. Assessing the credibility of the witnesses is the province of the jury, see United States v. Kessler, 321 F.3d 699, 702 (8th Cir. 2003), and we may not make "credibility determinations that are contrary to those the jury made," see United States v. Augustine, 663 F.3d 367, 373 (8th Cir. 2011).

Colombe also argues that because the family did not confront Simmons until several days after her initial phone call to Tiffany, it was unreasonable for the jury to conclude that the conversation was evidence of an agreement. But in the second call, Tiffany explained that she had already contacted their aunt, Ronda Hawk, who "went on a rampage after" Simmons. Tiffany also said Elnita was "pissed." As it turned out, Simmons was not at the Hunkpati office that day. But Colombe did not know that, and

a reasonable jury could conclude that she reached an agreement with one or more of the others to take action, whether that day or a few days later.

Next, a reasonable jury could conclude that overt acts were taken in furtherance of the conspiracy when Ronda, Kristal, and Elnita confronted Simmons at the Hunkpati offices. The sisters locked Simmons in the office, repeatedly demanded she pay the utility bill, and then told her, "this is what you get for testifying against Tally." Simmons testified that she felt intimated and threatened. Colombe called Tiffany shortly after Simmons was subpoenaed to testify, and Colombe made it clear that she knew Simmons had provided information about her to the federal government. Thus, a reasonable jury could make the connection between the conversation Colombe had with her sister and the events of September 12 at the Hunkpati office.

Colombe contends that the confrontation with Simmons was solely about an unpaid utility bill, not about retaliation, and thus the government failed to prove the object of the conspiracy. But a reasonable jury could disagree after hearing testimony about the comments the family members made to Simmons about her involvement in Colombe's case. Finally, Simmons was forced out of Hunkpati's office space and prevented from taking her computer and paperwork with her. A reasonable jury could find this interfered with her lawful employment. See 18 U.S.C. § 1513(e).

Viewing the evidence in the light most favorable to the jury's verdict, the judgment is affirmed.

_____