**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 16, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

VAUDA VIRGLE SHIPP, JR.,

      Defendant-Appellant.

No. 08-5157

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. Nos. 4:04-CR-00214-CVE-1 and 4:08-CV-00277-CVE-SAJ)**

---

John Bennett of Amarillo, Texas, for Defendant-Appellant.

Leena Alam, Assistant United States Attorney (Thomas Scott Woodward, Acting United States Attorney, with her on the brief), Northern District of Oklahoma, Tulsa, Oklahoma, for Plaintiff-Appellee.

---

Before **HENRY**, Chief Judge, **SEYMOUR** and **HOLMES**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Mr. Vauda Virgle Shipp, Jr., appeals the district court's denial of his 28 U.S.C. § 2255 habeas petition. We granted a certificate of appealability ("COA") on one issue: whether "*Chambers v. United States*, -- U.S. --, 129 S. Ct. 687 (2009), applies retroactively on collateral review to convictions that were final at the time the case was decided by the Supreme Court." *See* May 1, 2009 Order. We conclude that Mr. Shipp is entitled to retroactive application of *Chambers* to his § 2255 petition. Accordingly, we reverse and remand.

## I.

On September 14, 2005, Mr. Shipp was convicted of possessing a firearm after a felony conviction. At sentencing, he was categorized as an "armed career criminal" pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2) (2009) (the ACCA), based upon three predicate state convictions: (1) a 1984 conviction for assault with a dangerous weapon, (2) a 1984 conviction for possession of marijuana with intent to distribute, and (3) a 1987 conviction for escape for failure to report to a penal institution after he was permitted to be away on an official pass. Under § 924(e)(2), armed career criminals are subject to a statutory minimum of fifteen years' imprisonment. *See Chambers*, 129 S. Ct. at 689 (citing § 924(e)(1)). Although the guideline range for Mr. Shipp's offense of conviction was twenty-seven to thirty-three months, his guideline range under the ACCA was 188 to 235 months. The district court therefore sentenced him to 188

months' imprisonment.

On direct appeal, Mr. Shipp submitted challenges to his conviction and sentence, arguing *inter alia* that (1) the district court erred by classifying his escape charge as a violent felony and by failing to submit to the jury the question of whether his escape crime was a "violent" offense, and (2) his escape crime did not involve actual or potential violence. *See United States v. Shipp*, 233 F. App'x 847, 851 (10th Cir. 2007) (unpublished) (*Shipp I*). We rejected both arguments based on prior Tenth Circuit precedent. *Id.* at 851-52 ("the government need not . . . prove to a jury that a defendant's prior conviction constitutes a violent felony under § 924(e)" (quoting *United States v. Moore*, 401 F.3d 1220, 1226 (10th Cir. 2005)); "the reasons . . . for holding escape to be a crime of violence apply to all escapes, whether or not violence was actually involved." (quoting *United States v. Moudy*, 132 F.3d 618, 620 (10th Cir. 1998))).

Mr. Shipp filed a *pro se* petition for habeas relief under § 2255 on May 8, 2008, arguing ineffective assistance of counsel that resulted in a sentence "imposed in excess of the maximum authorized by law." Rec., vol. I at 25. As relevant here, he contended that "the sentencing judge erred in applying Tenth Circuit law and sentencing him as an armed career criminal for a walkaway escape conviction, when the Ninth Circuit does not treat this type of crime as a violent felony under the ACCA." *United States v. Shipp*, 628 F. Supp. 2d 1312, 1317 (N.D. Okla. 2008) (*Shipp* II).

The district court denied relief. *Id*. at 1320-21. Mr. Shipp filed a timely *pro se* petition for a COA, contending the ACCA enhancement gave rise to a "constitutional issue concern[ing] greater loss of liberty when he did not commit a prior crime of violence." Jan. 1, 2009 Mot. for a COA, at 2. On January 13, 2009, the Supreme Court decided *Chambers*, holding that Illinois's crime of failure to report for penal confinement fell outside the scope of the ACCA's "violent felony" definition because the offense did not have "as an element the use, attempted use, or threatened use of physical force against the person of another." 129 S. Ct. at 691. Mr. Shipp contends he is entitled to a reduction in his sentence pursuant to *Chambers*.

**II.**

We must first determine whether we have authority to review the issues raised by petitioner. Title 28 U.S.C. § 2253 governs our review of a district court's denial of a habeas petition. Under § 2253, we must grant a COA to a habeas petitioner before he may proceed in our court. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Miller-El v. Cockrell*, 532 U.S. 322, 335-36 (2003) ("Before an appeal may be entertained, a prisoner who was denied habeas relief in the district court must first seek and obtain a COA from a circuit justice or judge . . . . 28 U.S.C. § 2253(c) permits the issuance of a COA only [upon] a

-4-

'substantial showing of the denial of a constitutional right.'"); *see also Adams v. LeMaster*, 223 F.3d 1177, 1179 (10th Cir. 2000) ("[W]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [COA] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).[1]

The COA we previously issued is confined to the statutory issue of the retroactivity of *Chambers*. Nevertheless, circuit courts, including our own, have recognized that they possess the authority to expand the COA to cover uncertified, underlying constitutional claims asserted by an appellant. *See e.g.*, *Adams*, 223 F.3d at 1179-80 (expanding COA containing only procedural questions to include the underlying constitutional issue); *see also Villot v. Varner*, 373 F.3d 327, 337 n.13 (3d Cir. 2004) (exercising discretion to *sua sponte* expand

---

[1] In the district court, to the contrary, Mr. Shipp was entitled to habeas relief if he could show the "right to be released upon the ground that the sentence was imposed in violation of the Constitution *or laws of the United States*, or that the court was without jurisdiction to impose such sentence, *or that the sentence was in excess of the maximum authorized by law*, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255 (emphasis added). *See Davis v. United States*, 417 U.S. 333, 345 (1974) (concluding that "the test of the statute cannot sustain the Government's position that only claims 'of constitutional dimension' are cognizable under § 2255.")

the scope of the certificate of appealability granted by motions panel, citing 3d Cir. LAR 22.1(b)); *Valerio v. Crawford*, 306 F.3d 742, 764 (9th Cir. 2002) ("Although neither AEDPA nor [Fed. R. App. P. 22] specifically so provides, a court of appeals not only has the power to grant a COA where the district court has denied it as to all issues, but also to expand a COA to include additional issues when the district court has granted a COA as to some but not all issues."); *Nardi v. Stewart*, 354 F.3d 1134, 1136-40 (9th Cir. 2004) (expanding a COA to include a claim that both the district court and a motions panel previously had declined to certify); *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000) (affirming the Panel's ability to revisit a judge's determination of a procedural motion, including a COA, to confirm that it complies with applicable standards and to cure any deficiency). Before we may consider this appeal, therefore, we must examine whether Mr. Shipp's statutory challenge asserts an underlying constitutional claim.

Construing Mr. Shipp's *pro se* pleadings liberally, *see Boag v. MacDougall*, 454 U.S. 364, 365 (1982), we read Mr. Shipp's petition for a COA to raise a due process challenge to the length of his sentence. Since *In Re Winship*, 397 U.S. 358 (1970), the Supreme Court has "made clear beyond peradventure that *Winship*'s due process [] protections extend, to some degree, to determinations that [go] not to a defendant's guilt or innocence, but simply to the length of his sentence." *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000). Indeed, "due

process requires [] that the sentence for the crime of conviction not exceed the statutory maximum." *United States v. Grier*, 475 F.3d 556, 573 (3d Cir. 2007); *see also United States v. O'Flanagan*, 339 F.3d 1229, 1232 n.2 (10th Cir. 2003) (defendant cannot assert due process claim under *Apprendi* if his sentence does not exceed statutory maximum for underlying conviction) (citing *Harris v. United States*, 536 U.S. 545, 558, 565 (2002)).

Mr. Shipp's offense of conviction, possession of a firearm after a felony conviction, carries a maximum statutory penalty of ten years. *See* 18 U.S.C. § 924(a)(2). Under the ACCA, defendants qualifying as "armed career criminals" are subject to a mandatory minimum prison term of fifteen years. *See* § 924(e)(1); *Chambers*, 129 S. Ct. at 689. Relying in part on Mr. Shipp's prior escape conviction, the sentencing court concluded that Mr. Shipp's three prior violent felonies made him an armed career criminal. As such, Mr. Shipp was sentenced to 188 months' imprisonment, several years over the statutory maximum for the offense of conviction.[2] Because "jurists of reason would find it debatable whether the petition states a valid claim for the denial of a constitutional right," we grant a COA on Mr. Shipp's claim that, in light of

---

[2] As we have noted, the guideline range for Mr. Shipp's underlying conviction for possession of a firearm after a former felony was twenty-seven to thirty-three months. Mr. Shipp was sentenced on Feb. 15, 2006, *see* rec., vol. II at 19; as of the date of this Order, he has served in excess of forty-four months in prison.

*Chambers*, the sentencing court's application of the ACCA's armed career criminal enhancement to him violated his due process rights.

**III.**

With respect to Mr. Shipp's statutory retroactivity claim, both parties refer us to *Teague v. Lane*, 489 U.S. 288 (1989), as supplying the underlying analytical framework for this case. *See* Aplt. Br. at 5; Aple. Br. at 8. Under *Teague*, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced . . . unless it would fall within an exception." *Teague*, 489 U.S. at 310-11. But the plurality's announcement in *Teague* was limited to new "constitutional" rules of criminal "procedure." *Id.* at 315. *Chambers* does not present a new constitutional rule of criminal procedure, but rather a substantive rule of statutory interpretation. As the Supreme Court made clear in *United States v. Bousley*, 523 U.S. 614, 620 (1998), "because *Teague* by its terms applies only to procedural rules, we think it is inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress."

In contrast to *Teague*'s general bar on retroactivity of constitutional procedural rules to convictions that are already final, "[n]ew *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms." *Schriro v. Summerlin*, 542 U.S. 348,

-8-

352 (2004) (emphasis added). In both *Bousley*, 523 U.S. at 620, and *Schriro*, 542 U.S. at 352, the Court relied on *Davis v. United States*, 417 U.S. 333 (1974), in which it had articulated the rule governing retroactivity on collateral review of substantive statutory interpretations. In *Davis*, the Court considered whether a federal prisoner could assert, in a section 2255 motion, "that his induction order was invalid under the Selective Service Act and that he could not [have been] lawfully convicted for failure to comply with that order." *Id.* at 346. "The appropriate inquiry," the Court explained, "was whether the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether 'it . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" *Id*. As applied to the defendant in *Davis*, the Court answered this question in the affirmative, stating that such a defect arises where a petitioner's "conviction and punishment are for an act that the law does not make criminal." *Id*. We endorsed this application of *Davis* in *United States v. Cuch*, 79 F.3d 987, 994 (10th Cir. 1996), in which we recognized a "line of cases in which substantive nonconstitutional decisions concerning the reach of a federal statute were afforded complete retroactivity." *See id.* (citing *Davis*); *United States v. Shelton*, 848 F.2d 1485 (10th Cir.1988) (en banc); *United States v. Sood*, 969 F.2d 774 (9th Cir.1992); *United States v. Dashney*, 52 F.3d 298 (10th Cir.1995)). We noted that

[i]n each of these cases, the courts determined that a new Supreme Court interpretation of a criminal statute, which narrowed the scope of the relevant crime, should be applied retroactively on collateral review. The courts relied on the new decisions to vacate the convictions, holding that the petitioners had been convicted for conduct Congress had never made criminal.

*Id.* at 994.

Whether *Teague* or *Davis* supplies the governing standard applicable to a particular case is not always clear. In fact the Court noted in *Schriro* that it has "sometimes referred to [substantive rules] . . . as falling under an exception to *Teague*'s bar on retroactive application of procedural rules; [even though] they are more accurately characterized as substantive rules not subject to the bar." 542 U.S. at 352 n.4 (citations omitted). The distinction is particularly important in the habeas context.

The *Teague* doctrine is founded on the notion that one of the principal functions of habeas corpus is to assure that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be convicted. Consequently, unless a new rule of criminal procedure is of such a nature that without it the likelihood of an accurate conviction is seriously diminished, there is no reason to apply the rule retroactively on habeas review. By contrast, decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct beyond the power of the criminal law-making authority to proscribe, necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal.

*Bousley*, 523 U.S. at 620 (internal citations, quotations, and brackets omitted).

Furthermore, as the Supreme Court recognized in *O'Dell v. Netherland*, 521 U.S. 151(1997), the category of substantive rules encompasses not only those rules

-10-

"forbidding punishment of certain primary conduct," but also "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Id.* at 157 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989)).

As the government agrees, *Chambers* falls within the category of substantive decisions that "prohibit[] a certain category of punishment for a class of defendants because of their status or offense." *Id.* Pursuant to the ACCA, Mr. Shipp was sentenced as an armed career criminal to a term of incarceration that exceeds the statutory maximum for the underlying offense of conviction. *Chambers*' construction of the ACCA overrules our prior jurisprudence attributing violence to escape offenses that did not involve the use, attempted use, or threat of the use of physical force against another. *See*, *e.g.*, *Shipp I*, 233 F. App'x at 852 ("assuming Mr. Shipp's escape was non-violent, we attribute a potential for violence to all escapes . . . ."); *United States v. Moudy*, 132 F.3d 618, 620 (10th Cir. 1998).[3] It is undisputed that Mr. Shipp's escape conviction,

---

[3] As we said in *Weitz v. Lovelace Health System, Inc.*, 214 F.3d 1175, 1180 (10th Cir. 2000), "[i]n the case of an intervening Supreme Court ruling, a single panel is permitted to reconsider a previous Tenth Circuit decision to the extent the new case law invalidates our previous analysis." The Court's decision in *Chambers*, 129 S. Ct. at 691, requires us to disregard our prior precedent characterizing escape as a per se "violent felony" under the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii). *See United States v. Moudy*, 132 F.3d 618 (10th Cir. 1998); *United States v. Gosling*, 39 F.3d 1140 (10th Cir. 1994); *United States v. West*, 550 F.3d 952 (10th Cir. 2008); *United States v. Springfield*, 196 F.3d 1180 (10th Cir. 1999); *United States v. Adkins*, 196 F.3d 1112 (10th Cir. 1999); *United States v. Mitchell*, 113 F.3d 1528 (10th Cir. 1997). Notably, in *United States v. Charles*,

(continued...)

which the Presentence Report describes as merely the "fail[ure] to return as directed," *see* rec., vol. II, at 10, does not qualify as a "violent felony" under § 924(e). *See Chambers* 129 S. Ct. at 691-92 (holding failure to return is akin to failure to report, and such conduct "falls outside the scope of ACCA's definition of 'violent felony'"). In light of *Chambers*, Mr. Shipp does not constitute an "armed career criminal" for purposes of the ACCA and thus he received "a punishment that the law cannot impose upon him." *See Schriro*, 542 U.S. at 352. Where, as here, Mr. Shipp was sentenced beyond the statutory maximum for his offense of conviction, his due process rights were violated. "There can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and presents exceptional circumstances that justify collateral relief . . . ." *Davis*, 417 U.S. at 346-47.

Given *Davis* and its progeny, we hold that the Supreme Court's construction of the ACCA in *Chambers* applies retroactively to Mr. Shipp on collateral review. Accordingly, we **REVERSE** the district court's denial of Mr. Shipp's § 2255 petition. We **REMAND** the case to the district court with directions to correct Mr. Shipp's sentence in light of *Chambers*, 129 S. Ct. at 691,

---

[3](...continued) 576 F.3d 1060 (10th Cir. 2009), we recognized the applicability of *Chambers* to the question whether a "walkaway" escape is necessarily a "crime of violence" pursuant to U.S.S.G. § 4B1.1(a), *id.* at 1068 n.2, and we stated that "we must reexamine *Chambers*'s impact upon our holding that all escape convictions are crimes of violence for purposes of the career offender provisions," *id.* at 1068.

by resentencing Mr. Shipp without the "armed career criminal" classification.