# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-40877

United States Court of Appeals
Fifth Circuit

**FILED**

June 12, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

DESMOND DEON JONES,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, OWEN, and HIGGINSON, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Desmond Deon Jones, convicted as a felon unlawfully in possession of a firearm, challenges his sentence, contending that the district court erred in concluding that his prior federal conviction for escaping from the custody of the Bureau of Prisons by leaving a halfway house was a "crime of violence" within the meaning of Sentencing Guidelines § 4B1.2(a).[1] We vacate the sentence and remand.

**I**

---

[1] U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 4B1.2(a) (2011).

No. 12-40877

Jones was convicted of possession of a firearm by a felon.[2] The presentence report recommended a base offense level of 20 under § 2K2.1(a)(4)(A), based on the presentencing officer's conclusion that Jones had a prior felony conviction for a "crime of violence," as defined in § 4B1.2(a).[3] The prior felony conviction was under 18 U.S.C. § 751(a) for leaving a halfway house. The indictment underlying that conviction alleged that Jones "knowingly escape[d] from the custody of the Bureau of Prisons, by absconding from Dismas Halfway House in Corpus Christi, Texas, an institutional facility in which he was lawfully confined . . . ." Jones objected to the presentence report, arguing that this prior conviction did not constitute a crime of violence and therefore, that the base offense level should be 14, which, with a Criminal History Category of VI, would result in an advisory Sentencing Guidelines range of 37 to 46 months of imprisonment. The district court overruled Jones's objection, concluding that the applicable advisory Guidelines range was 70 to 87 months of imprisonment. The district court sentenced Jones to 70 months in prison. This appeal ensued.

## II

Whether a district court correctly interpreted the Guidelines is a question of law that we review de novo.[4] The determination that an offense is a "crime of violence" is a legal question subject to de novo review.[5] The Guideline provision at issue is § 2K2.1, which applies to convictions for the unlawful possession of a firearm by a felon. The base offense level is 20 if the defendant "committed any part of the instant offense subsequent to sustaining

---

[2] 18 U.S.C. §§ 922(g)(1), 924(a)(2).

[3] U.S.S.G. § 2K2.1(a)(4)(A) (2011).

[4] *United States v. Stoker*, 706 F.3d 643, 645-46 (5th Cir. 2013).

[5] *Id.*

No. 12-40877

one felony conviction of . . . a crime of violence."[6]  The commentary to § 2K2.1 provides that "crime of violence" is defined with reference to § 4B1.2(a) and application note 1 of the commentary to § 4B1.2.[7]  Under § 4B1.2(a), the term "'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year," that

> (1)    has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2)    is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.[8]

The commentary to § 4B1.2 elaborates, further defining what constitutes a "crime of violence" for purposes of this section of the Guidelines:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.  Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, *by its nature, presented a serious potential risk of physical injury to another*.[9]

Only the residual clause is at issue.  The question is whether Jones's prior escape conviction qualifies as a crime of violence because it "involve[d] conduct

---

[6] U.S.S.G. § 2K2.1(a)(4)(A) (2011).

[7] *Id.* cmt. n.1 ("'Crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2.").

[8] U.S.S.G. § 4B1.2(a) (2011) (emphasis added).

[9] *Id.* cmt. n.1 (emphasis added).

that present[ed] a serious potential risk of physical injury to another"[10] or "by its nature, presented a serious potential risk of physical injury to another."[11]

Jones's prior conviction for escape was obtained under a federal statute, which provides:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States . . . shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both . . . .[12]

In determining what constitutes "a serious potential risk of physical injury to another" under § 4B1.2(a) of the Guidelines, our court has considered decisions of the Supreme Court construing the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B), to be instructive.[13] There are differences between the residual clause in the ACCA's definition of a "violent felony" and § 4B1.2(a)'s residual clause, as will be discussed in more detail.[14] However, our court has held that like the residual clause of the ACCA's definition of "violent felony," the residual clause in § 4B1.2(a), at a minimum, includes crimes that, like the enumerated crimes in § 4B1.2(a), "typically involve purposeful, violent, and aggressive conduct," and that this "conduct is such

---

[10] *Id*. § 4B1.2(a) (2011).

[11] *Id*. cmt. n.1.

[12] 18 U.S.C. § 751(a).

[13] *See, e.g.*, *United States v. Marquez*, 626 F.3d 214, 217-18 (5th Cir. 2010).

[14] *Compare* U.S.S.G. § 4B1.2(a) (2011) *with* 18 U.S.C. § 924(e)(2)(B).

that it makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim."[15]

Jones argues that the Supreme Court's opinion in *Chambers v. United States*,[16] a decision construing the ACCA, indicates that absconding from a halfway house does not present a serious potential risk of injury to another. The defendant in *Chambers* was convicted of failing to report to serve a penal sentence under a state statute that described "several different kinds of behavior" including failure to return from work or from a furlough, failure to abide by the terms of home confinement, escape from custody, and escape from a penal institution.[17]  Categorizing a conviction for failure to report as distinct from escape, the Supreme Court held that failure to report for imprisonment was not a violent felony under the ACCA.[18]  This holding was predominantly supported by statistics compiled by the United States Sentencing Commission showing that of 160 failures to report in 2006 and 2007, none resulted in the use or threat of force, and only five (3.1%) involved a dangerous weapon.[19]

The same report upon which the Supreme Court relied in *Chambers* categorized leaving a halfway house as "Leaving nonsecure custody," a category that included, without distinction, escapes from facilities such as prison camps, as well as escapes from home detention.[20]  Of 177 instances, three (1.7%) involved the use of force or threat of force, and four instances

---

[15] *Marquez*, 626 F.3d at 221 (quoting *Begay v. United States*, 553 U.S. 137, 144-45 (2008)) (internal quotation marks omitted).

[16] 555 U.S. 122 (2009).

[17] *Chambers*, 555 U.S. at 126.

[18] *Id.* at 126-30.

[19] *Id.* at 129, 131 (citing U.S. SENTENCING COMM'N, REPORT ON FEDERAL ESCAPE OFFENSES IN FISCAL YEARS 2006 AND 2007 7 (Nov. 2008)).

[20]  U.S. SENTENCING COMM'N, *supra* note 19, at 4.

(2.3%) involved a dangerous weapon.[21]  These statistics support treating an escape from a halfway house as conceptually different from an escape from other types of correctional facilities when considering the potential risk of physical injury to another.

The Supreme Court's decision in *Chambers* has led other circuit courts to conclude that escape from a halfway house and other similar escapes are not "crimes of violence" within the meaning of § 4B1.2.[22]  We agree that typically, such a crime does not present a potential risk of physical injury to another.  In addition to the statistics gathered by the Sentencing Commission, the characteristics of commitment to a halfway house differ from commitment to other penal facilities.  A halfway house, also known as a community corrections center or residential reentry center, represents "the lowest custody level within the [federal prison] system."[23]  Individuals are generally required to be in the facility from 9:00 pm to 6:00 am, and exceptions are made during these hours for employment or other approved programming.[24]  As we have noted, "a community corrections facility is not a jail."[25]  Leaving a facility that allows

---

[21] *Id.* at 7.

[22] *E.g.*, *United States v. Clay*, 627 F.3d 959, 970 (4th Cir. 2010); *United States v. Hart*, 578 F.3d 674, 680-81 (7th Cir. 2009); *United States v. Ford*, 560 F.3d 420, 425 (6th Cir. 2009); *see also United States v. Mills*, 570 F.3d 508, 512-13 (2d Cir. 2009) (holding that a defendant's failure to return to his place of confinement was not a violent felony under the ACCA); *United States v. Lee*, 586 F.3d 859, 870-71 (11th Cir. 2009) (same); *United States v. Templeton*, 543 F.3d 378, 383 (7th Cir. 2008) (holding, before *Chambers* was decided, that a "walkaway" escape was not a crime of violence under § 4B1.2).

[23] *United States v. Shaw*, 979 F.2d 41, 43 (5th Cir. 1992).

[24] *See* BUREAU OF PRISONS, STATEMENT OF WORK: RESIDENTIAL REENTRY CENTER 63 (Feb. 2012), *available at* www.bop.gov/business/docs/res_reentry_ctr_sow_2012.pdf.

[25] *United States v. Voda*, 994 F.2d 149, 152 (5th Cir. 1993); *see also United States v. Chavez*, 204 F.3d 1305, 1315 (11th Cir. 2000) ("We have previously held that confinement to a halfway house at night with the requirement that a defendant work at a job or seek employment during the day is a liberty 'markedly different from custodial incarceration in a penitentiary.'" (quoting *Dawson v. Scott*, 50 F.3d 884, 888 (11th Cir. 1995))); *Bailor v. Salvation Army*, 51

No. 12-40877

individuals to sign in and sign out does not typically involve "violent" or "aggressive" behavior. "[A]n individual who simply walks away from custody [is] just as unlikely as an individual who fails to report to custody 'to call attention to his whereabouts by simultaneously engaging in additional violent and unlawful conduct.'"[26] Unlike some other escapes, leaving a halfway house does not require overcoming physical barriers, breaking locks on doors, or evading security personnel.[27] "Escaping" from a halfway house does not typically "present a serious potential risk of physical injury" to others.

## III

The Government contends that our decisions in *United States v. Ruiz*[28] and *United States v. Hughes*[29] are binding precedent that require us to hold that Jones's prior conviction for escape is a "crime of violence." We disagree.

In *Ruiz*, the defendant had previously been convicted under 18 U.S.C. § 751(a) for escaping from a federal prison camp.[30] The indictment underlying the escape offense alleged that Ruiz "'knowingly escape[d] from custody of [a federal prison camp] . . . in which he was lawfully confined.'"[31] Ruiz asked this court to consider facts that were not in the indictment, arguing that he "simply walked away from a prison camp where no physical barriers prevented the

---

F.3d 678, 683 (7th Cir. 1995) (describing residents' freedom of movement in a halfway house); *United States v. Parker*, 902 F.2d 221, 222 (3d Cir. 1990) ("We think it clear that a period of confinement [at a halfway house] cannot possibly be equated with an equivalent period of imprisonment.").

[26] *Lee*, 586 F.3d at 870-71 (quoting *Ford*, 560 F.3d at 425).

[27] *Id.* at 870.

[28] 180 F.3d 675 (5th Cir. 1999).

[29] 602 F.3d 669 (5th Cir. 2010).

[30] *Ruiz*, 180 F.3d at 676.

[31] *Id.* (alterations in original).

escape and no guards were armed."[32]  We considered only the contents of the indictment and concluded that escape from a federal prison camp was a crime of violence within the meaning of § 4B1.2.[33]  We quoted decisions of the Tenth Circuit to the effect that "'[e]very escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time.'"[34]  In one of those decisions from the Tenth Circuit, the defendant had been convicted of escape on two prior occasions, once for escaping from a community treatment center and then for escaping from a correction center.[35]

We did not have before us in *Ruiz* an indictment that charged absconding from a halfway house.  Our holding in *Ruiz* dealt with an escape from a prison camp, which is not the equivalent of a halfway house.  We are unpersuaded that leaving and failing to return to a halfway house presents a "powder keg" situation.  We further note that in a habeas proceeding under 28 U.S.C. § 2255 after *Chambers* was decided, the Tenth Circuit has disavowed the decisions that we cited favorably in *Ruiz*.[36]  After our decision in *Ruiz*, the Tenth Circuit held that a defendant's prior conviction for "failure to report to a penal institution after he was permitted to be away on an official pass" was not a "violent felony" under the ACCA.[37]  The Tenth Circuit expressly "disregard[ed] [its] prior precedent" regarding failure-to-return escape convictions, citing

---

[32] *Id.*

[33] *Id.* at 677

[34] *Id.* (quoting *United States v. Mitchell*, 113 F.3d 1528, 1533 (10th Cir. 1997) (quoting *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994))).

[35] *Mitchell*, 113 F.3d at 1533.

[36] *See United States v. Shipp*, 589 F.3d 1084, 1090-91 (10th Cir. 2009).

[37] *Id.* at 1086, 1090-91.

*United States v. Mitchell* and *United States v. Gosling* as being among its "disregarded" decisions.[38]

The other decision of our court that the Government contends mandates an affirmance of Jones's sentence is *United States v. Hughes*.[39] That case involved the ACCA, not § 4B1.2 of the Guidelines.[40] Hughes had previously been convicted of escape from a federal institution, in violation of 18 U.S.C. § 751(a).[41] Our court applied the categorical approach,[42] as the Supreme Court has directed in construing the ACCA, including its residual clause.[43] We concluded that § 751(a) is divisible because it "contains multiple crimes" one of which is "'escape . . . from an[] institution . . . in which [a person] is confined,'"[44] and we applied the modified categorical approach[45] to determine that this was

---

[38] *Id.* at 1090 n.3; *see also United States v. Charles*, 576 F.3d 1060, 1066-70 (10th Cir. 2009) (questioning whether, in light of *Chambers*, a walkaway escape is necessarily a "crime of violence" under the career offender sections of the Guidelines, and vacating and remanding for consideration of whether the walkaway escape at issue was necessarily a "crime of violence").

[39] 602 F.3d 669 (5th Cir. 2010).

[40] *Hughes*, 602 F.3d at 673-77.

[41] *Id.* at 676.

[42] *Id.* at 674-76.

[43] *See, e.g.*, *Sykes v. United States*, 131 S. Ct. 2267, 2272-73 (2011); *Begay v. United States*, 553 U.S. 137, 141 (2008) ("In determining whether this crime is a violent felony [under the ACCA's residual clause], we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.") (citing *James v. United States*, 550 U.S. 192, 208-09 (2007) for the proposition that "attempted burglary is a violent felony even if, on *some* occasions, it can be committed in a way that poses no serious risk of physical harm" (emphasis in original)).

[44] *Hughes*, 602 F.3d at 676 (quoting 18 U.S.C. § 751(a)) (last alteration added).

[45] *See, e.g.*, *Chambers v. United States*, 555 U.S. 122, 125-26 (2009) ("We have made clear, however, that, for purposes of ACCA's definitions, it is the generic sense of the word 'felony' that counts. The statute's defining language, read naturally, uses 'felony' to refer to a crime as generally committed. And by so construing the statute, one avoids the practical difficulty of trying to ascertain at sentencing, perhaps from a paper record mentioning only a guilty

the crime of conviction.[46]  Our court was constrained from looking beyond the elements of the statute of conviction in *Hughes* because the categorical and modified categorical approaches consider only the elements of the crime of conviction and whether, typically, such a crime presents a serious potential risk of harm to another person.[47]  One of the inquiries in construing the residual clause under the ACCA is whether, categorically, the risk posed by a crime is the same kind of risk posed by the enumerated offenses in the ACCA.[48]  For example, burglary is an enumerated offense in the ACCA.  Not all

---

plea, whether the present defendant's prior crime, as committed on a particular occasion, did or did not involve violent behavior.  Thus, to determine, for example, whether attempted burglary [a non-enumerated offense] is a 'violent felony,' we have had to examine, not the unsuccessful burglary the defendant attempted on a particular occasion, but the generic crime of attempted burglary. . . .  The Illinois statute now before us . . . places together in a single numbered statutory section several different kinds of behavior.  It separately describes those behaviors as (1) escape from a penal institution, (2) escape from the custody of an employee of a penal institution, (3) failing to report to a penal institution, (4) failing to report for periodic imprisonment, (5) failing to return from furlough, (6) failing to return from work and day release, and (7) failing to abide by the terms of home confinement.  We know from the state-court information in the record that Chambers pleaded guilty to 'knowingly failing to report' for periodic imprisonment 'to the Jefferson County Jail, a penal institution.'") (citations and some alterations omitted).

[46] *Hughes*, 602 F.3d at 676.

[47] *See, e.g., James*, 550 U.S. at 202 (discussing the categorical and modified categorical approaches in construing the ACCA, explaining that "we 'look only to the fact of conviction and the statutory definition of the prior offense,' and do not generally consider the 'particular facts disclosed by the record of conviction'") (quoting *Shepard v. United States*, 544 U.S. 13, 17 (2005) (quoting *Taylor v. United States*, 495 U.S. 575, 602 (1990))); *id.* at 207-08 (rejecting the argument that courts "cannot treat attempted burglary as an ACCA predicate offense unless all cases present such a risk," observing that "[o]ne could, of course, imagine a situation in which attempted burglary might not pose a realistic risk of confrontation or injury to anyone—for example, a break-in of an unoccupied structure located far off the beaten path and away from any potential intervenors," and holding that "the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another"); *see also Sykes*, 131 S. Ct. at 2272 ("So while there may be little doubt that the circumstances of the flight in [the defendant's] own case were violent, the question is whether [the statute of conviction], as a categorical matter, is a violent felony.").

[48] *James*, 550 U.S. at 203.

burglaries involve an actual confrontation between the burglar and occupants of a home. But the risk of such a confrontation is what makes burglary a "violent felony."[49] Though attempted burglary is not an enumerated offense, the risk of confrontation during an attempted burglary is the same as or greater than that presented by a burglary.[50] In construing the ACCA, a court considers a crime categorically in assessing the risk.

That is what our court did in *Hughes*, concluding that the statutory elements of Hughes's conviction under 18 U.S.C. § 751(a) were that he escaped from an institution in which he was confined. The statute of conviction did not granulate this means of violating the statute further. Our court concluded that escape from a penal institution in which one is confined typically "creat[es] a situation described in the statutory language as involving 'conduct that presents a serious potential risk of physical harm to another.'"[51] We recognized that even if failure to report were covered by § 751(a), "failures to report accounted for only 10 percent of the instances of escape crimes the Sentencing Commission considered."[52] Accordingly, because escape from an institution *typically*, though not always, presented a serious potential risk of physical harm to another, it was within the ACCA's residual clause.[53]

But the residual clause in § 4B1.2 differs materially from the ACCA's residual clause. The commentary to § 4B1.2 regarding the residual clause does not have an analog in the ACCA. The commentary to § 4B1.2 provides that

---

[49] *James*, 550 U.S. at 203; *see also Chambers*, 555 U.S. at 128-29; *Begay v. United States*, 553 U.S. 137, 145-46 (2008).

[50] *James*, 550 U.S. at 203-204.

[51] *Hughes*, 602 F.3d at 676-77.

[52] *Id*. at 677 n.7.

[53] *Id*. at 677.

"[o]ther offenses are included as 'crimes of violence' if . . . the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another."[54]  The commentary regarding the residual clause in § 4B1.2 directs a court to look at *conduct expressly charged* in the count of conviction to determine if that *conduct* by its nature presented a serious potential risk of physical injury to another.

Our en banc court held in *United States v. Charles*[55] that because the express language in the commentary to § 4B1.2 pertaining to the residual clause references *conduct expressly charged* in a count of conviction, "a crime is a crime of violence under § 4B1.2(a)(2) only if, from the face of the indictment, the crime charged or the conduct charged presents a serious potential risk of injury to a person."[56]  We said that "[i]njury to another need not be a certain result, but it must be clear from the indictment that the crime itself or the conduct specifically charged posed this serious potential risk."[57]  We explained that "Application Note 1, by requiring that other crimes must 'by [their] nature' present a 'serous potential risk of physical injury to another,' calls for a categorical inclusion or exclusion of crimes and/or conduct."[58]  We note that there is some inconsistency in our case law as to whether courts can consider the conduct alleged in the indictment, or are strictly bound by the categorical and modified categorical approaches, when applying the residual clause of

---

[54] U.S.S.G. § 4B1.2 cmt. n.1 (2011).

[55] 301 F.3d 309 (5th Cir. 2002) (en banc).

[56] *Charles*, 301 F.3d at 314.

[57] *Id.*

[58] *Id.*

§ 4B1.2(a)(2).[59] However, we are bound by this court's *en banc* ruling in *Charles*, which permitted consideration of the conduct alleged in the indictment.

The indictment underlying Jones's conviction alleged that he "knowingly escape[d] from the custody of the Bureau of Prisons, by absconding from Dismas Halfway House in Corpus Christi, Texas, an institutional facility in which he was lawfully confined, at the direction of the United States Attorney General by virtue of a judgment and commitment of the United States District Court . . . ." The conduct charged on "the face of the indictment" is that Jones absconded from a halfway house. Absconding from a halfway house does not categorically present a serious potential risk of physical injury to another.

This holding is consistent with *Chambers* and is consistent with other decisions from federal courts of appeals that have addressed the issue of escapes from halfway houses or other similar walkaway escapes post-*Chambers*. Each of our sister circuits to reach the issue has reached the conclusion that escapes from halfway houses are not a "crime of violence."[60]

*     *     *

---

[59] *Compare id.* at 313-14, *and United States v. Lipscomb*, 619 F.3d 474, 477-79 (5th Cir. 2010), *with United States v. Mohr*, 554 F.3d 604, 607, 609 (5th Cir. 2009), *with United States v. Stoker*, 706 F.3d 643, 649-51 (5th Cir. 2013).

[60] *See, e.g., United States v. Clay*, 627 F.3d 959, 970 (4th Cir. 2010); *United States v. Hart*, 578 F.3d 674, 680-81 (7th Cir. 2009); *United States v. Ford*, 560 F.3d 420, 425 (6th Cir. 2009); *see also United States v. Mills*, 570 F.3d 508, 512-13 (2d Cir. 2009) (holding that a defendant's failure to return to his place of confinement was not a violent felony under the ACCA); *United States v. Lee*, 586 F.3d 859, 870-71 (11th Cir. 2009) (same); *United States v. Templeton*, 543 F.3d 378, 383 (7th Cir. 2008) (holding, before *Chambers* was decided, that a "walkaway" escape was not a crime of violence under § 4B1.2). The Ninth Circuit reached this conclusion before *Chambers*. *See United States v. Piccolo*, 441 F.3d 1084, 1085, 1088-90 (9th Cir. 2006). The Tenth Circuit also seems to agree. In *United States v. Charles*, involving an escape from a halfway house, the Tenth Circuit remanded to the district court to clarify the nature of the escape. 576 F.3d 1060, 1068-69 (10th Cir. 2009). The district court then determined that the escape was not a crime of violence. *United States v. Charles*, 667 F. Supp. 2d 1246 (D. Kan. 2009).

No. 12-40877

The sentence is VACATED. The case is remanded to the district court for proceedings consistent with this opinion.